UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KENNETH J. PHELAN,

                            Plaintiff,

    -v-

SENIOR COUNSELOR S. ZENZEN, et al.,

                            Defendants.

_____

DECISION AND ORDER

10-CV-6704 CJS

## INTRODUCTION

This is an action pursuant to 42 U.S.C. § 1983, brought by Kenneth Phelan ("Plaintiff"), a prisoner in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Now before the Court is Defendants' motion to partially dismiss (Docket No. [#12]) the Complaint for failure to state a claim. The application is granted in part and denied in part.

## BACKGROUND

The following facts are taken from the Complaint [#1] and are assumed to be true for purposes of this Decision and Order. At all relevant times Plaintiff was housed at Five Points Correctional Facility ("Five Points"). The eight Defendants, whose full names are not contained in the record, were employed by DOCCS at Five Points. S. Zenzen ("Zenzen") was Deputy Superintendent of Programs, and Defendant Colvin ("Colvin") was Deputy Superintendent for Security. Defendants Parish ("Parish"), Jones ("Jones") and Netti ("Netti") were Corrections Sergeants. Defendants Bennett ("Bennett"), McIntyre ("McIntyre") and Evans ("Evans") were Corrections Officers.

Although the Complaint does not explicitly say so, it appears that at all relevant times Plaintiff was confined in the Special Housing Unit ("SHU"). In that regard, Plaintiff indicates that his meals were brought to his cell on trays, which would not be the case if he were in general population. *See*, Complaint ¶ 23c.

Between June 2010 and September 2010, Plaintiff was not allowed one hour of recreation or "yard time" each day. It appears that Plaintiff was deprived of recreation as a punishment, because he had "refuse[d] to come in from the yard." Complaint ¶ 18. Plaintiff contends that this was unfair, because he was "not on notice" that refusing to come in from the yard could result in such a deprivation order. *Id*. He further states that he has a constitutional right to at least one hour of recreation per day. *Id*. Apparently, Netti authorized the deprivation order. *Id*. at ¶ 19. Plaintiff complained about the deprivation order to Parish, Jones and Colvin.

In or about August 2010, Plaintiff field a grievance about being denied yard time. Later, Bennett went to Plaintiff's cell and threatened to beat him if he did not withdraw the grievance. Plaintiff withdrew the grievance.

Between July 28, 2010 and August 6, 2010, Plaintiff was not allowed to have a shaving razor. Plaintiff implies that the razor deprivation order was imposed because he refused to take his psychiatric medications. Complaint ¶ 20. Plaintiff maintains that he has a right to refuse to take his medications without being punished. *Id*. The Complaint is confusing on this point, though, since it also states that Plaintiff "was not allowed to get [his] daily psyche meds" on July 28, 2010, and that McIntyre "refused to give" him the medication. *Id*. at ¶ 9. Viewed together, these statements seem to indicate that Plaintiff was denied his

2

psychiatric medications, and then falsely blamed for having refused them. The decision to deny him a razor was made by Jones and McIntyre. Plaintiff alleges that the deprivation of a razor "forced [him] to live in unsanitary dirty conditions." Complaint ¶ 8.

On September 13, 2010, Evans entered Plaintiff's cell and confiscated his Imitrex pain medication, which Plaintiff states was for "migraines and sinus problems." Complaint ¶ 21. Plaintiff states that Jones was also present. Later that day, Plaintiff "suffered severe migraine attack, serious pain and had breathing problems." *Id*. at ¶ 22.

On July 11, 2010, July 16, 2010 and July 21, 2010, Zenzen refused to mail three pieces of Plaintiff's outgoing legal mail, apparently because Plaintiff did not have sufficient funds in his inmate account to cover the cost of postage. Complaint ¶ 10 ("Since I have no money on my books, defendant Zenzen refused to allow this to go out."). Zenzen did not return the pieces of mail to Plaintiff until ten days later. Plaintiff maintains that Zenzen thereby denied him access to the courts, and specifically, that Zenzen caused him to miss filing deadlines in the Second Circuit Court of Appeals, the U.S. District Court for the Northern District of New York and the U.S. District Court for the Western District of New York. Complaint ¶¶ 10, 14. Zenzen also refused to allow Plaintiff to make photocopies of legal documents, apparently because Plaintiff had no money in his inmate account to pay for copies. *Id*. at ¶ 17; *see also, id*. at p. 20. Plaintiff maintains that prison officials are required to advance inmates the costs of postage and photocopying. *See, e.g., Id*. at p. 19 (Asking the Court to order Zenzen to mail Plaintiff's correspondence, "even if the inmate has no funds in his account.").

Plaintiff filed inmate grievances regarding Zenzen's refusal to send out his legal mail and the razor deprivation order. Bennett threatened to beat Plaintiff if he did not withdraw the grievances, which caused Plaintiff to withdraw them.

On June 30, 2010, a cell shield was placed on Plaintiff's cell. The Deprivation Order, which the Court will consider on this motion since it is incorporated by reference in to the Complaint and/or integral to it, states that it was imposed because Plaintiff spit on a staff member. See, Pl. Resp. to Def. Motion [#15]. Plaintiff maintains that the cell shield order was improper, because, "There is no posted rule that says I can be put on cell shield if you throw things outside your cell." Complaint [#1] ¶ 24. Plaintiff further contends that the shell shield order was improper because it was not authorized by the Deputy Superintendent of Security as required by "regulations," and because he did not receive a hearing. *Id*. at ¶ 13. Plaintiff complained about the cell shield to Colvin, Jones and Parish.

On August 15, 2010, Plaintiff attempted to mail correspondence to the New York Times and USA Today newspapers, but Zenzen refused to send out the correspondence. As noted earlier, Zenzen's decision was apparently due to the fact that Plaintiff had no money to pay for postage. Plaintiff alleges that Zenzen's refusal to mail those pieces of mail denied him "freedom of the press." Complaint ¶ 16.

In September 2010, Jones and Evans confiscated Plaintiff's pillow, "for several nights," which cause him to experience neck pain. Complaint [#1] ¶ 23 & p. 15a.

Colvin also issued a deprivation order, directing that Plaintiff be given a styrofoam food tray, instead of a standard tray, and that he not receive eating utensils. Complaint [#1] ¶ 23(c). Plaintiff maintains that Colvin was motivated by discriminatory animus, because Plaintiff is "a disabled Irishman with red hair." *Id*.

4

On May 19, 2011, Defendants filed the subject motion [#12] to dismiss for failure to state a claim. More specifically, Defendants' Notice of Motion [#12] requests "judgment dismissing the Complaint <u>in part</u>." (emphasis added). On June 29, 2011, Plaintiff filed a response [#15].

DISCUSSION

Defendants have moved to dismiss under Rule 12(b)(6), and the applicable standard for such a motion is clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007 ) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).[1] When applying this

---

[1] In their memorandum of law at page 2, Defendants contend that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." However, this "no set of facts" standard has been replaced by *Twombly*'s plausibility standard. *See, e.g., Thomas and Agnes Carvel Foundation v. Carvel*, 736 F.Supp.2d 730, 756 (S.D.N.Y. 2010) ("The traditional test on a Rule 12(b)(6) motion required that the complaint not be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 590 (2d Cir.2006) (*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Supreme Court has recently rejected this

standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000). Furthermore, "[i]t is axiomatic that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys and the Court is required to read the Plaintiff's *pro se* Complaint liberally and interpret it raising the strongest arguments it suggests." *Jackson v. DeMarco*, No. 10–CV–5477(JS)(AKT), 2011 WL 1099487 at *1 (E.D.N.Y. Mar. 21, 2011).

### 1st Amendment Denial of Access to the Courts

Defendants begin by arguing that Plaintiff has not stated a claim for denial of access to the courts against Zenzen. At the outset, to the extent that Plaintiff contends that he has a constitutional right to free photocopies of legal documents, he is mistaken. *See, Collins v. Goord*, 438 F.Supp.2d 399, 416 (S.D.N.Y. 2006) ("[A]n inmate has no constitutional right to free copies and prison regulations that limit access to such copies are reasonably related to legitimate penological interests.") (citations and internal quotation marks omitted). Nor has Plaintiff alleged or shown that the photocopying procedures utilized at Five Points are unconstitutional. Therefore, that portion of the Complaint alleging that Zenzen deprived Plaintiff of free copies of legal papers is denied for failure to state a claim.

The remainder of Plaintiff's claim for denial of access to the courts, liberally construed, is that Zenzen refused to send out Plaintiff's legal mail, because Plaintiff had no money in his inmate account to pay for postage. Plaintiff essentially maintains that he has

---

formulation, however, and hence a complaint is now subject to dismissal unless its factual allegations, if credited, make the claim "plausible". *See Iqbal*, 129 S.Ct. at 1949; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560–61, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).").

6

a constitutional right to unlimited free legal postage, and asks the Court to order "Zenzen to allow all inmates to mail out legal mail without interference, the next working day after depositing it in mailbox, postage to be deducted from inmate's account, even if he has no funds in account." Complaint p. 19. Notably, though, Plaintiff does not reference the postage procedures at Five Points, or claim that such procedures are not reasonably related to legitimate penological objectives.

On this point, the Court takes judicial notice that DOCCS Directive 4421 has long provided that inmates are entitled to a certain amount of free legal postage each week, and further provides a procedure for prisoners to obtain additional legal postage when certain conditions are met. *See, e.g., Pettus v. Bartlett*, 2007 WL 841775 at *9 (W.D.N.Y. Mar. 19, 2007) (Siragusa, J.) (Discussing the relevant section of Directive 4421). Plaintiff, who evidently had a plethora of legal actions pending at the relevant time,[2] does not contend that Zenzen failed to follow Directive 4421. Instead, Plaintiff contends that he is entitled to unlimited free postage for legal mail. He is mistaken, and the Complaint fails to plausibly state a claim against Zenzen for denial of access to the Courts.

### *8th Amendment Denial of Recreation*

The Court liberally construes the Complaint to allege that while Plaintiff was confined in SHU, for several weeks he was denied his usual one hour of outdoor recreation each day, as punishment because he had refused to come in from recreation. *See*, Complaint ¶ 18. Plaintiff contends that he was not on notice that he could be punished for "refus[ing] to

---

[2] *See*, Complaint [#1] ¶ ¶ 10, 14-15, 17. Moreover, a review of the Court's docket indicates that Plaintiff commenced seven (7) actions in this District during the past two years. A decision from the Northern District of New York indicates that Plaintiff commenced *nineteen* (19) actions in that district during 2010-2011. *See, Phelan v. Hersh*, Civ. No. 9:10–CV–0011 (GLS/RFT), 2011 WL 6031940 at *6 (N.D.N.Y. Sep. 13, 2011).

7

come in from [the] yard," and that his "understanding is [that he has] a right to yard every day for at least one hour." *Id*. Plaintiff cites cases including *Wilson v. Seiter*, 111 S.Ct. 2321 (1991) and *Albro v. Onondaga County, NY*, 681 F.Supp. 991, 995 (N.D.N.Y. 1988) as supporting the idea that "having at least an hour every day of yard is a constitutional right." Pl. Opposition [#15] at p. 3.

Defendants argue that there is no constitutional right to outdoor recreation. In that regard, they cite, *inter alia*, *Shakur v. Sieminski*, Civil Action No. 3:07–cv–1239(CFD), 2009 WL 2151174 at *4 (D.Conn. Jul. 15, 2009), which, while recognizing that exercise is "a basic human need that must be provided for inmates," indicates that prisoners are not entitled to exercise outside of their cells. *See, id.* ("While courts have found that denial of all opportunity to exercise violates an inmate's constitutional rights, they have found no violation where the inmate has an opportunity for exercise, either in or outside of his cell."). Plaintiff does not allege that he is unable to exercise in his cell, but rather, states that he is entitled to at least one hour of exercise outside of his cell, and more specifically, to one hour of exercise in the prison "yard."

Plaintiff's belief that he is constitutionally entitled to at least one hour of exercise outside of his cell each day, regardless of any disciplinary infraction that he may have committed (e.g., refusing to come in from recreation), is incorrect. As this Court previously stated,

> [a]lthough the Second Circuit has approved one hour of outdoor recreation per day, it has not held that to be the constitutional minimum. *Shakur v. Sieminski*, 3:07–cv–1239(CFD), 2009 U.S. Dist. LEXIS 60796, 2009 WL 2151174 (D.Conn. July 15, 2009). Instead, deprivations of exercise for a relatively brief periods of time are usually upheld. *Ford v. Phillips*, 05 Civ. 6646(NRB), 2007 U.S. Dist. LEXIS 25226 (S.D.N.Y. Mar. 28, 2007) (finding that, as a matter of

8

> law, minor and temporary deprivations of property, showers and recreation "in no way involved the severity of treatment which must be shown to make out a case of cruel and unusual punishment."); *see, e.g., Branham v. Meachum*, 77 F.3d 626, 630–31 (2d Cir.1996) (finding that keeping inmate on lockdown and "full restraint" status without outdoor exercise for a period of approximately twenty-two days does not violate the Eighth Amendment); *Houston v. Goord*, No. 9:03–CV–1412 (GTS/DEP), 2009 U.S. Dist. LEXIS 27481, 2009 WL 890658 (N.D.N.Y. Mar. 31, 2009) (declaring Eighth Amendment claim without merit because denial of opportunity to exercise outdoors for less than two weeks was de minimis); *Davidson [v. Coughlin*, 968 F.Supp. [121,] 131 [(S.D.N.Y. 1997)]* (deprivation of outdoor exercise for fourteen days did not violate Eighth Amendment); *Arce v. Walker*, 907 F.Supp. 658, 662–63 (W.D.N.Y.1995) (Eighth Amendment not violated when inmate was deprived of out-of-cell exercise for eighteen out of nineteen days).

*Dumpson v. Goord*, No. 00–CV–6039–CJS, 2011 WL 4345760 at *9 (W.D.N.Y. Sep. 15, 2011). Here, the Complaint does not allege that Plaintiff was deprived of all exercise. Instead, the Complaint alleges that, for a period of several weeks at most, Plaintiff was deprived of exercise in the prison yard as punishment for a disciplinary infraction. Such allegation fails to state an 8th Amendment claim, and will therefore be dismissed.

### *Denial of Shaving Razor and Pillow*

Plaintiff maintains that being deprived of his razor for ten days forced him to live in unsanitary conditions and violated his constitutional rights. Plaintiff further maintains that such deprivation was wrongful, since it was based on a false claim that he had refused to take his psychiatric medications. Plaintiff similarly alleges that the denial of his pillow "for several nights" violated his constitutional rights. However, even assuming the truth of these factual allegations, they are the type of *de minimis* deprivations that fail to state a constitutional claim. *See, Gillard v.Rovelli*, Civ. Action No. 9:09–CV–0431 (TJM/DEP), 2010 WL 5149277 at *5 (N.D.N.Y. Aug. 30, 2010) (collecting cases concerning razors); *McCoy*

9

*v. Goord*, 255 F.Supp.2d 233, 260 (S.D.N.Y. 2003) ("[A] two-week suspension of shower privileges does not suffice as a denial of basic hygienic needs, nor does failure to provide razors for shaving rise to the level of constitutional concern.") (citation and internal quotation marks omitted); *Williams v. DeTella*, No. 95 C 6498, 1997 WL 603884 at *2 (N.D.Ill. Sep. 23, 1997) ("Clothing is one of the necessities of civilized life, and while prisoners are not entitled to a daily change of clothes, at some point the denial of clean clothes could be a deprivation of constitutional magnitude. . . . The same goes for bedding, although the court emphasizes that the limit is set by decency and hygiene, not comfort. Pillows need not be provided.") (citations omitted); *Loadholt v. Lape*, Civ. No. 9:09–CV–0658 (LEK/RFT), 2011 WL 1135934 at *4 (N.D.N.Y. Mar. 3, 2011) ("[C]ourts in this Circuit have found the deprivations of better pain medicine, a cane, a mattress, a pillow, or better shoes, as the Plaintiff has alleged, do not meet, neither singularly nor collectively, the objective standard under the Eighth Amendment."); *Smith v. Arnold*, No. CV 07-1353-PHX-DGC (MEA), 2008 WL 5331754 at *4 (D.Ariz. Dec. 22, 2008) ("[A] restriction on possessing a television, a radio/cassette player, headphones, a fan, an electric shaver, and tapes does not rise to the level of a significant and atypical hardship that creates a liberty interest."). Accordingly, the allegations related to the temporary deprivation of a razor and pillow are dismissed for failure to state a claim.

### 8th Amendment Medical Claims

Defendants construe the Complaint as alleging two separate claims for deliberate indifference to a serious medical need. The first pertains to the "alleged denial of psychiatric medication," and the second pertains to "denial of medication." As discussed earlier, with regard to his psychiatric medications, Plaintiff alleges both that McIntyre "refused to give"

him the medications, and that he was disciplined for refusing to take the same medications. As for the other medication, Plaintiff alleges that Evans and Jones confiscated his Imitrex, which he needed for migraine and sinus pain.

The legal standard applicable to Eighth Amendment medical claims is well settled in this Circuit:

> To substantiate an Eighth Amendment claim for medical indifference, a plaintiff must prove that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834–35, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A deliberate indifference claim requires a showing of both objective and subjective elements. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir.2003). "Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996) (citation and internal quotation marks omitted). Where the allegation is that the defendant failed to provide any treatment for the medical condition, "courts examine whether the inmate's medical condition is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir.2006). <u>Where the challenge is to the adequacy of the treatment provided, such as in cases where treatment is alleged to have been delayed or interrupted, the seriousness inquiry focuses on "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract." *Smith*, 316 F.3d at 186.</u> Moreover, "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir.2011); *see also Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998).
>
> "Subjectively, the official charged ... must act with a sufficiently culpable state of mind." *Curcione*, 657 F.3d at 122 (citation and internal quotation marks omitted); *see also Chance*, 143 F.3d at 703. A person acts with deliberate indifference to an inmate's health or safety only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of

11

serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

*Hanrahan v. Mennon*, No. 11–1367–pr, 470 Fed.Appx. 32, 33, 2012 WL 1764196 at *1 (2d Cir. May 18, 2012) (underline added). In the instant case, Plaintiff's challenge is to the "adequacy of the treatment provided," since he alleges that Defendants interrupted treatments that were already in place.

Defendants contend that the Complaint fails to state a claim, since there is no allegation that Plaintiff actually suffered from a serious medical condition, and no allegation that Defendants were aware of, and disregarded, such a condition. On this point, Defendants state: "Here, Plaintiff admits that [he] voluntarily received medications (see Complaint par. 9) and refused to take them (see Complaint par. 20). Thus undermining any factual or legal argument that these medications were necessary to treat a serious medical condition." Def. Memo of Law [#at p. 7. However, the Court disagrees with Defendants' characterization of the Complaint. For example, paragraph 9 of the Complaint alleges that McIntyre, Comfort and Jones prevented Plaintiff from obtaining his "daily psyche meds." Moreover, at paragraph 20, Plaintiff indicates that he was punished for *purportedly* refusing medication, but in his opposition papers [#15] he states that it is "not true" that he refused the medication. *Id.*, Memo of Law at p. 3. Moreover, the Complaint alleges that Defendants wrongfully confiscated Plaintiff's medication for migraine and sinus headaches. Accordingly, contrary to Defendants' argument, the Complaint indicates that Plaintiff did not receive his medications. Defendants have therefore not shown that they are entitled to dismissal of the 8th Amendment medical claims.

### Bennett's Threats to Injure Plaintiff for Filing Grievances

Plaintiff maintains that on two separate occasions, Bennett threatened to beat him if he did not withdraw grievances, which in both cases caused him to withdraw the grievances. On the first occasion, Bennett allegedly said, "If you don't drop your grievance about not getting rec[reation] I will take you up to MHU [the mental health unit] and beat the shit out of you." Complaint ¶ 6. On the second occasion, Bennett allegedly said, "You better stop filing grievances or I'm going to beat the shit out of you," and "Drop your grievances or else." *Id*. at ¶ 11. Defendants argue that these allegations fail to state a claim, since "verbal harassment and name calling, absent physical injury, are not constitutional violations." Def. Memo of Law at pp. 7-8.

However, threats of harm may constitute adverse action sufficient to support a retaliation claim, if they are sufficiently specific:

> Under some circumstances, verbal threats may constitute adverse action, depending on their degree of specificity and the context in which they are uttered. *See, e.g., Hepworth v. Suffolk County*, No. 2:02-cv-6473, 2006 WL 2844408, at *8-9 (E.D.N.Y. Sept. 29, 2006) (denying summary judgment where "continued verbal threats" that inmate "would receive another beating or be killed" was sufficient "evidence ... such that a reasonable jury could find that the officers unconstitutionally retaliated against [inmate] ... for exercising his First Amendment" rights). Thus, vague intimations of some unspecified harm generally will not rise to the level of adverse action for the purpose of a First Amendment retaliation claim. *See, e.g., Bartley v. Collins*, No. 95 Civ. 10616, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (stating that "verbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action") (*citing Dawes*, 239 F.3d at 493, for the proposition that "[n]ot every unnecessary statement of a prison guard regarding an inmate's exercise of free speech violates the First Amendment"); *Alicea v. Howell*, 387 F.Supp.2d 227, 237 (W.D.N.Y.2005) (defendant's "alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff

would 'have to pay the consequences' for filing a grievance against [defendant] d[id] not give rise to a First Amendment retaliation claim"); *Cruz v. Hillman*, No. 01 Civ. 4169, 2002 WL 31045864, at *7 (S.D.N.Y. May 16, 2002) (allegation that defendant made statement which "expressed his dislike for inmates who file civil lawsuits, and later came to plaintiff's cell and said 'Green Haven is an open battlefield, so be careful' " was insufficient to state retaliation claim).

*Bumpus v. Canfield*, 495 F.Supp.2d 316, 326 (W.D.N.Y. 2007); *see also, Mateo v. Gundrum*, No. 9:10–CV–1103 (GLS/GHL), 2011 WL 5325790 at *9-10 (N.D.N.Y. Aug. 30, 2011) ("Here, accepting the allegations of the complaint as true, Plaintiff has alleged that Defendant Martin's comments were specific enough and uttered in a context that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights.").

Accordingly, since Defendants' motion is based on the mistaken premise that threats of harm necessarily cannot support a retaliation claim if they are not carried out, without any analysis of the specific threats allegedly made by Bennett, the motion to dismiss the retaliation claims against Bennett is denied.

### *Placement of Plexiglass Shield on Plaintiff's Cell*

Plaintiff maintains that the placement of a shield on his cell violated his constitutional rights for two reasons: First, because, "There is no posted rule that says I can be put on cell shield if you throw things outside your cell," Complaint [#1] ¶ 24, and second, because the cell shield order was not authorized by the Deputy Superintendent of Security after a hearing, *id*. at ¶ 13. Defendants contend that such allegations fail to state a claim, since Plaintiff seemingly admits that he threw "things" out of his cell, and since he had no liberty interest in remaining free of a cell shield. The Court agrees that, even construing the

Complaint liberally, Plaintiff implicitly acknowledges that he threw things out of his cell, which can result in the imposition of a cell shield. *See*, 7 N.Y.C.R.R. § 305.6(b)(1). Plaintiff complains, though, that he was not on notice of this rule, that the cell shield order was not authorized by the correct person, and that he did not receive a hearing. At the time Plaintiff commenced this action, the cell shield had been in place approximately three months. *See*, Complaint ¶ 13 (cell shield order was issued June 30, 2010).

Plaintiff alleges that the imposition of the cell shield violated his right to procedural due process. However, Plaintiff cannot maintain a procedural due process claim unless he had a liberty interest in remaining free of having a cell shield. A liberty interest arises where the objected-to restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Lee v. Coughlin*, 26 F.Supp.2d 615, 630 (S.D.N.Y. 1998) (*quoting Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S.Ct. 2293 (1995)). On this point,

> factors relevant to determining whether the plaintiff endured an atypical and significant hardship include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement.
>
> Our cases make clear that duration is not the only relevant factor. The conditions of confinement are a distinct and equally important consideration in determining whether a confinement in SHU rises to the level of 'atypical and severe hardship. Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical. Accordingly we have explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights. Instead, our cases establish the following guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed. Where the

plaintiff was confined for an intermediate duration-between 101 and 305 days-development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required. In those situations, a district court must make a fact-intensive inquiry, examining the actual circumstances of SHU confinement in the case before it, without relying on its familiarity with SHU conditions in previous cases.

Restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual. However, the Court of Appeals has concluded that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical.

*McAllister v. Garrett*, No. 10 Civ. 3828(LAP), 2012 WL 4471531 at *5-6 (S.D.N.Y. Sep. 25, 2012) (*quoting Palmer v. Richards*, 364 F.3d 60, 64-65 (2d Cir. 2004); other citations and internal quotation marks omitted).

Here, Plaintiff was merely subject to a cell shield order for approximately ninety days. Apart from alleging the existence of the cell shield order, the Complaint does not contain any facts suggesting that the cell shield imposed an atypical and significant hardship. Accordingly, the allegations concerning the cell shield will be dismissed for failure to state a claim.

### *Denial of Eating Utensil*

Plaintiff alleges that Colvin issued a deprivation order, requiring that he receive his meals on a styrofoam tray, without any eating utensil. *See*, Complaint ¶ 23c. Plaintiff alleges that such deprivation was cruel and unusual punishment, and that he should have received notice and hearing before the order was issued. *Id*. at p. 15b. Plaintiff does not include any

16

facts about why the deprivation order was issued, how long it was in place, or how it affected him. Although, his opposition to Defendants' motion suggests that the deprivation order was imposed because he refused to return his usual tray. *See*, Pl. Opposition Memo of Law [#15] at p. 8 ("[T]here is no posted rule that says you can be put on styro trays if you refuse to give back [a] regular tray."). Such sparse factual allegations are not sufficient to state a plausible claim that a constitutional violation occurred. Accordingly, the claim pertaining to the styrofoam tray/eating utensil deprivation order is dismissed.

### Equal Protection

The Complaint includes a conclusory statement that Colvin violated Plaintiff's "equal protection right," by issuing deprivation orders, "by not having a posted rule for same," and by "not treating [him] the same as other disabled inmates." Complaint p. 15c. Plaintiff also indicates that Colvin did not like him because he is Irish and has red hair. Plaintiff states that he is "disabled," but does not describe his alleged disability. Plaintiff does not otherwise indicate that he belongs to a protected class, or that he can proceed as a "class of one." For example, Plaintiff does not allege that he was treated differently than others similarly situated. *See, Green v. McLaughlin*, 2012 WL 1592621 at *3 (2d Cir. May 8, 2012) ("[P]laintiffs alleging a class-of-one equal protection violation must, *inter alia*, show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.") (citation omitted). The equal protection claim is therefore dismissed.

CONCLUSION

Defendants' motion for partial dismissal [#12] is granted in part and denied in part. The following claims are dismissed: Denial of access to the courts; denial of exercise in the recreation yard"; denial of razor; denial of a pillow; styrofoam tray/denial of an eating utensil; placement of cell shield; and equal protection. The application is denied as to the 8th Amendment medical claims and the retaliation claims against Bennett, and the case will proceed as to those claims, and any claims which Defendants did not specifically move to dismiss.

SO ORDERED.

Dated: November 6, 2012
Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge